550 A.2d 814

Harold Gondelman, on his own behalf and on be-half of all others similarly situated, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

*Harold Gondelman,* petitioner, for himself.

*Gregory R. Neuhauser,* Deputy Attorney General, with him, *John G. Knorr, III,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

*Henry T. Reath, Duane, Morris & Heckscher,* for intervenor, Leon Katz.

OPINION BY JUDGE PALLADINO, November 3, 1988:

Harold Gondelman filed a petition for review, in the nature of a complaint for declaratory judgment, in this court's original jurisdiction. Gondelman seeks to have this court declare unconstitutional section 16(b) of Article V of the Pennsylvania Constitution, which man-

dates retirement of all judges at age 70.[1] The Commonwealth responded to this petition by filing preliminary objections containing two objections. One objection challenges this court's subject matter jurisdiction to consider Gondelman's petition on the basis that Gondelman, because he is not currently a judge nor running for election, does not have standing to raise the constitutionality of the mandatory retirement of judges at age 70. The other objection is in the nature of a demurrer and alleges that the petition fails to state a cause of action upon which relief can be granted.

Prior to argument on the preliminary objections, Judge LEON KATZ of the Court of Common Pleas of Philadelphia County and Judge ROBERT A. WRIGHT of the Court of Common Pleas of Delaware County (Intervenors) sought permission to intervene in this action. Both the Commonwealth and Gondelman consented to the intervention; this court granted permission to intervene. Gondelman and Intervenors (Petitioners) then filed a motion for summary relief which was scheduled for argument with the preliminary objections.

Intervenors are judges who will reach the age of 70 before the expiration of their terms of office. At oral argument the Commonwealth indicated that because of the intervention it would not pursue the preliminary objection to subject matter jurisdiction. The matters which are before us for resolution, therefore, are whether the petition states a cause of action and if so, whether, as a matter of law, section 16(b) of Article V of the Pennsylvania Constitution is unconstitutional. For the reasons which follow, we would propose to overrule the Commonwealth's preliminary objections and deny Petitioners' motion for summary relief.

---

[1] This section states, in pertinent part that:
Justices, judges and justices of the peace shall be retired upon attaining the age of 70 years.

Initially we note that a preliminary objection in the nature of a demurrer will be sustained only where the complaint is clearly insufficient to establish any right to relief and any doubt must be resolved in favor of the pleader. *County of Allegheny v. Commonwealth of Pennsylvania*, 507 Pa. 360, 490 A.2d 401 (1985). On the other hand, summary relief[2] may not be granted unless the moving party is entitled to judgment as a matter of law. *See Aiken v. Radnor Township Board of Supervisors*, 83 Pa. Commonwealth Ct. 190, 476 A.2d 1383 (1984). For summary relief to be granted it must be clear that there are no issues of material fact and any doubt must be resolved in favor of the non-moving party. *See Wolgemuth v. Kleinfelter*, 63 Pa. Commonwealth Ct. 395, 437 A.2d 1329 (1981).

Petitioners challenge the constitutionality of Article V, section 16(b) of the Pennsylvania Constitution under the Pennsylvania and United States Constitutions. Two challenges are made under the Pennsylvania Constitution. The first is that mandatory retirement of judges at age 70 violates the guarantees of Article I, section 1.[3] The second is that mandatory retirement discriminates against judges in the exercise of a civil right in violation of Article I, section 26.[4] The challenge under the United

---

[2] Summary relief in this case was properly sought pursuant to Pa. R.A.P. 1532(b). The official note to this rule indicates that it is a generalization of Pa. R.C.P. No. 1098 (peremptory judgment).

[3] Section 1 states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

[4] Section 26 states:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

States Constitution is that mandatory retirement of judges at age 70 violates the equal protection and due process clauses of the fourteenth amendment.[5] Additionally, Intervenors allege that the mandatory retirement of judges at age 70 violates the Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§621-634. We will address the viability of each of these challenges in the following order: (1) Pennsylvania Constitution; (2) ADEA; (3) United States Constitution.

## I. PENNSYLVANIA CONSTITUTION

Article V, section 16(b) of the Pennsylvania Constitution, mandating retirement of judges at age 70, was adopted by the electors of Pennsylvania on April 23, 1968.[6] The challenges to the constitutionality of the mandatory retirement of judges at age 70, Pa. Const. Art. V, §16(b), based on Article I, sections 1 and 26, are premised on an assertion that the rights in Article I have "superior mandatory force" and prevail over provisions contained in the remainder of the Pennsylvania Constitution. As authority for this argument, Article I, section 25 of the Pennsylvania Constitution is referenced. This section states:

---

[5] The fourteenth amendment, in pertinent part, states:
No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[6] On April 23, 1968, the electors repealed Article V of the Pennsylvania Constitution of 1874 and adopted a new Article V. Article V deals with the judicial branch of the government. The current Pennsylvania Constitution is referred to as the Constitution of 1968 because the numerous changes adopted by the people in 1968 were the result of a Constitutional Convention.

To guard against transgressions of the high powers which we have delegated, we declare that everything in this Article is excepted out of the general powers of government and shall remain inviolate.

It is contended that the "general powers of government" include those provisions in the remainder of the Pennsylvania Constitution. We cannot agree. *Armstrong v. King*, 281 Pa. 207, 126 A. 263 (1924), is cited in support of the proposition that Article I, section 25[7] elevates Article I to a superior position over the other provisions of the Pennsylvania Constitution. However, the Pennsylvania Supreme Court in *Armstrong* was not determining whether Article I was of superior force. The issue before the court in *Armstrong* was whether a constitutional provision limiting the submission of constitutional amendments to no "oftener than once in five years" prohibited the advertisement of an amendment for submission to the electors on November 4, 1924 because a constitutional amendment had been submitted and approved on November 6, 1923.[8] The court held that this provision was to be followed and prohibited the submission of the proposed amendment to the electors in 1924. The court stated that the five year provision could not be used to challenge a constitutional amend-

---

[7] The provision currently found at Article I, section 25 of the Pennsylvania Constitution of 1968 was, at the time of the *Armstrong* decision, in Article I, section 26 of the Pennsylvania Constitution of 1874.

[8] Article 18 of the Pennsylvania Constitution of 1874. This provision may be found in Article XI, section 1 of the Pennsylvania Constitution of 1968. Article XI, section 2, however, contains an exception to this prohibition in the event of emergency but requires agreement by two-thirds of each house of the General Assembly, rather than a majority, before the proposed amendment may be published and submitted to the qualified electors of the Commonwealth.

ment after it had been voted on and approved by the required majority of the electors. The supremacy of article I over the remainder of the constitution was not at issue.

The supremacy of Article I over another portion of the Pennsylvania Constitution, using the proposition now set forth in Article I, section 25, was raised in *Collins v. Commonwealth*, 262 Pa. 572, 106 A. 229 (1919). At issue in *Collins* was the constitutionality of the Act of May 10, 1917, P.L. 159, which permitted Ida Collins to bring suit against the Commonwealth for damages that might be due as a result of the death of her husband while driving on a state highway. Article III, section 7 of the Pennsylvania Constitution of 1874 prohibited the General Assembly from passing a special law "regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding." Article I, section 11 of the Pennsylvania Constitution of 1874 provided, in pertinent part, that "[s]uits may be brought against the commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

Collins argued that the special law permitting her to sue the Commonwealth could not be held unconstitutional under Article III, section 7 because Article I, section 11 permitted the General Assembly to allow suit and, because of Article I, section 26,[9] that right could not be restricted. The Pennsylvania Supreme Court, while noting that Article I, section 26 might give the Article I sections containing those "inalienable rights expressly reserved to the people" a special significance, held that "section 26 does not give to the clause quoted from section 11 an independent position in our scheme of government, but leaves it to be construed in connection with all other relevant constitutional provisions." 262 Pa. at 576, 106 A.2d at 231.

---

[9] *See supra* note 7.

More recently the Pennsylvania Supreme Court has considered the impact of Article I in the Pennsylvania Constitution, although not in connection with its supremacy over another constitutional provision. In *Western Pennsylvania Socialist Workers v. Connecticut General Life Ins. Co.*, 512 Pa. 23, 28-29, 515 A.2d 1331, 1334 (1986), the court describes a constitution, and the Pennsylvania Constitution in particular, as follows:

> The primary purposes of a constitution are to establish a government, define or limit its powers and divide those powers among its parts. . . . State constitutions . . . typically establish governments of general powers, which possess all powers not denied by the state constitution. . . . Our state constitution functions this way and restrains these general powers by a Declaration of Rights [Article I]. (Citations omitted.)

The Supreme Court noted that the provision found in Article I, section 25 has, without material change, been a part of the Pennsylvania Constitution since 1776 and that it acts to "limit our state government's general power." *Id.* at 30, 515 A.2d at 1335.

We conclude that the effect of Article I, section 25 is not to raise Article I to a superior position over the remainder of the Pennsylvania Constitution. Rather, its effect is to prohibit the government, defined by the remainder of the Constitution, from acting in any manner to limit or restrain those rights set forth in Article I. This concept has been aptly described as follows:

> [A] declaration of rights as we have called it in Pennsylvania, is a designation of the recognized inherent private rights of an individual which are protected against infringement by government. The declarations are prohibitions and restrictions of the powers of officials which they must accept and follow. When the people,

through their frame of government, gave power to the General Assembly, officials and agencies of government, they reserved from those powers the designated rights of the individual. A right . . . is reserved by all people only in the sense that it is reserved by each person. 'All' the people, except by constitutional amendment, cannot deny one person of any of these rights. They cannot do it through their officials, their legislators, or by direct action such as initiative or referendum.

Woodside, Pennsylvania Constitutional Law 113 (1985). Article I has never been used to invalidate another provision of the Pennsylvania Constitution. We now hold that one part of the Pennsylvania Constitution may not be used to challenge the constitutionality of another part of that same constitution. Therefore, the constitutional challenges to Article V, section 16(b) based on article I, sections 1 and 26 do not state a cause of action upon which relief can be granted.

## II. ADEA

Section 4(a)(1) of ADEA, 29 U.S.C. §623(a)(1), states, in pertinent part, that "[i]t shall be unlawful for an employer to . . . discharge any individual or otherwise to discriminate against any individual . . . because of such individual's age." Section 12(a), 29 U.S.C. §631 (a), states that the prohibitions in ADEA are "limited to individuals who are at least 40 years of age."[10] The Commonwealth contends that Intervenors cannot state a

---

[10] ADEA was made applicable to states as employers by amendment in 1974. Pub. L. No. 93-259, §28(a)(1)-(4), 88 Stat. 78 (1974). When enacted, section 631(a) contained an upper age limit. Pub. L. No. 90-202, §12, 81 Stat. 607 (1967). The upper age limit was eliminated from section 631(a) in 1986. Pub. L. No. 99-592, §2(c), 100 Stat. 3342 (1986).

cause of action based on ADEA because section 11(f), 29 U.S.C. §630(f), excludes elected judges from the protection against age discrimination in ADEA.

Section 11(f) states, in pertinent part:

The term 'employee' means an individual employed by an employer except that the term 'employee' *shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof,* or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision. The term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country.

29 U.S.C. §630(f) (emphasis added). Pennsylvania courts have not addressed the issue of whether Pennsylvania judges are excluded from the protection of ADEA. Other jurisdictions have addressed the effect of ADEA on state constitutional provisions mandating retirement of judges at age 70.

The Massachusetts Constitution provides that all judges in the Commonwealth of Massachusetts are to be chosen by appointment of the governor, Mass. Const. part II, c.2, §1, Art. 9, and must retire at age 70. *Id.,* c.3, Art. 1. The mandatory retirement at age 70 provision was challenged as being invalid because it conflicted with ADEA. The Supreme Judicial Court of Massachusetts in *Apkin v. Treasurer,* 401 Mass. 427, 517 N.E. 2d 141 (1988), held that because the United States Congress did not clearly express an intention to

apply ADEA to appointed state judges, ADEA did not preempt the Massachusetts constitutional provision mandating retirement of judges at age 70. In *EEOC v. Commonwealth of Massachusetts*, 680 F. Supp. 455 (D. Mass. 1988), a federal district court also reached the conclusion that ADEA did not invalidate the Massachusetts constitutional provision requiring retirement of judges at age 70. The basis of the federal district court's decision was that the exception clause in section 11(f) had to be interpreted as including all state judges, whether elected or appointed, because of the policy making position of judges in state government. *Id.* at 462.

The New York Constitution also mandates retirement of judges at age 70. N.Y. Const. Art. VI, §25. The New York Constitution provides that judges of some of the New York courts shall be appointed while others are to be elected.[11] When section 12 of ADEA was amended in 1986 to remove any upper age limit to its protection, the Administrative Board of the Office of Court Administration in New York determined that ADEA was not applicable to elected judges but did prohibit appointed judges from being forced to retire prior to the expiration of their appointive terms. A number of elected judges filed a declaratory judgment action seeking to have the constitutional provision mandating retirement declared invalid on the basis that the Administrative Board's interpretation of ADEA resulted in a vio-

---

[11] Justices of the New York Court of Appeals are appointed by the governor. N.Y. Const. Art. VI, §2. Justices of the New York Supreme Court are elected. *Id.*, §4. Judges of the New York Court of Claims are appointed by the governor. *Id.*, §9. Judges of New York County, Surrogate's, Family and District Courts are elected. *Id.*, §§10, 12, 13, 16. Judges of the civil division of the New York City Court are elected while those of the criminal division are appointed by the mayor. *Id.*, §15. Judges of local courts outside New York City are elected if it is a town court and chosen as the legislature shall so direct in cities. *Id.*, §17.

lation of the due process and equal protection clauses of the fourteenth amendment of the United States Constitution. The Court of Appeals of New York in *Diamond v. Cuomo,* 70 N.Y. 2d 338, 520 N.Y.S.2d 732, 514 N.E. 2d 1356 (1987), *appeal dismissed,* U.S. , 108 S.Ct. 2008 (1988), held that disparate treatment of elected and appointed judges did not make the mandatory retirement provision invalid because the reasons for mandating retirement, while partially frustrated, were not irrational.[12]

Intervenors make a different ADEA argument than those asserted in New York and Massachusetts. Intervenors contend that they are not elected to "public office" within the meaning and intent of section 11(f) and, therefore, are not exempted from ADEA protection. Intervenors support this novel proposition by arguing that (1) the duties of judges are different than those of public officers in the other two branches of government and (2) the method provided in the Pennsylvania Constitution for removing judges is different from that for removing legislators and elected executive officers.[13] We are unpersuaded by Intervenors' argument.

---

[12] In *Maresca v. Cuomo,* 64 N.Y. 2d 242, 485 N.Y.S. 2d 724, 475 N.E. 2d 95 (1984), *appeal dismissed,* 474 U.S. 802 (1985), the Court of Appeals of New York rejected a facial challenge to the constitutionality of the New York Constitution provision requiring retirement of judges at age 70, based on the equal protection and due process clauses of the fourteenth amendment of the United States Constitution. The court applied the rational basis test and found the provision rationally related to legitimate state objectives.

[13] Intervenors focus on the fact that judges, after their first elected term expires, run unopposed for retention for another term, Pa. Const. Art. V, §15, while legislators and elected officers do not have that option. They also cite the fact that judges, unlike legislators and elected executive officers, may be removed from office by the Pennsylvania Supreme Court on its own initiative or by recommendation of the Judicial Inquiry and Review Board. *Id.,* §18.

Public office is defined in Black's Law Dictionary 1107 (5th ed. 1979), in pertinent part, as follows:

> Essential characteristics of 'public office' are (1) authority conferred by law, (2) fixed tenure of office, and (3) power to exercise some portion of sovereign functions of government; Key element of such test is that officer is carrying out sovereign function. . . . Essential elements to establish public position as 'public office' are: position must be created by constitution, . . . portion of sovereign power of government must be delegated to position, . . . duties must be performed independently without control of superior power other than law, and position must have some permanency and continuity.

There can be no doubt that the office of judge is a public office. The position is created by the constitution, judges have a fixed tenure of office, and judges most certainly perform a sovereign function of government. The fact that the type of government function performed by judges differs from that performed by members of the legislature or officials of the executive branch does not make the position of judge any less of a public office. Neither does the fact that the Pennsylvania Constitution provisions dealing with removal treat the judiciary different from the legislative and executive branches. Examination of the Pennsylvania Constitution shows numerous differences among all three branches of government.[14] These differences do not make the position of judge any less a public office than that of governor or legislator.

---

[14] There are many differences created by the Pennsylvania Constitution among the three branches of government. These include: Individuals must be 21 years old to be elected as a representative and 25 years old to be elected as a senator. Pa. Const. Art. II, §5. The governor, lieutenant governor and attorney general must be

Elected judges in Pennsylvania are clearly excluded from the protection of ADEA by the exception clause of section 11(f). Intervenors cannot state a cause of action challenging the constitutionality of the mandatory retirement provision of the Pennsylvania Constitution on the basis of ADEA.

## III. UNITED STATES CONSTITUTION

The constitutionality of the mandatory retirement of judges at age 70, Pa. Const. Art. V, §16(b), is also challenged on the basis that it violates the due process and equal protection clauses of the fourteenth amendment of the United States Constitution. The due process violation is premised on the "irrebuttable presumption" doctrine. Petitioners' argument is that mandatory retirement at age 70 presumes that judges over that age are incompetent and this presumption violates due process because judges over age 70 are deprived of their positions without having been given an opportunity to prove their competence. The equal protection violation argument is that judges over age 70 are treated differently than those under age 70 for no legitimate reason, or if there is a legitimate reason, mandatory retirement at age 70 is an irrational means of achieving the objective sought.

Identical legal arguments were made by a group of five Pennsylvania trial judges in a declaratory judgment suit brought in federal district court in 1978. The district court agreed with the judges on both the due

---

30 years old. *Id*. Art. IV, §5. The attorney general must be a member of the Pennsylvania bar. *Id*. There is no age requirement for judges; however, all except district justices must be members of the Pennsylvania bar. *Id*. Art. V, §12. Legislators are elected for two years, *id*. Art. II, §2, the governor for four years and is permitted no more than two terms *id*. Art. IV, §4, and judges, excluding district justices, for ten years. *Id*. Art. V, §15.

process and equal protection argument. *Malmed v. Thornburgh (Malmed I)*, 478 F. Supp. 998 (E.D. Pa. 1979). However, the Third Circuit Court of Appeals reversed. *Malmed v. Thornburgh (Malmed II)*, 621 F.2d 565 (3d Cir.), *cert. denied*, 449 U.S. 955 (1980). The Commonwealth, while acknowledging that this court is not bound by the Third Circuit's decision, urges us to adopt the analysis of the court in the *Malmed II* decision. Petitioners agree that they are making the same United States Constitution challenges to the constitutionality of Pa. Const. Art. V, §16(b) as were made in *Malmed I* and *II*. They request that this court adopt the reasoning of the district court's decision in *Malmed I*.

Careful review of both decisions shows disagreement concerning (1) viability and application of the "irrebuttable presumption" doctrine and (2) application of the equal protection rational basis test. At this preliminary point in the litigation of the instant case, we are unwilling to adopt the rationale of either decision.[15] The determinations of the federal courts in *Malmed I* and *II* were based on an evidentiary record. All we have before us is a petition, preliminary objections to the peti-

---

[15] We do not at this time make any decision as to the viability of the "irrebutable presumption" doctrine or the appropriate test to be applied in determining if the due process and equal protection clauses have been violated. Pennsylvania has recognized three possible tests for evaluating fourteenth amendment challenges. *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984). These are: (1) rational basis, applied if neither a suspect class nor a fundamental right is involved; (2) strict scrutiny, applied if a suspect class or fundamental right is involved; (3) intermediate, applied when the classification is "sensitive" and the right, while not fundamental, is "important." *Id.*, 505 Pa. at 145, 477 A.2d at 1305-06. We note that, in addition to pleading the loss of a property right (employment), the loss of a liberty right (reputation) is alleged in the petition in this case. This right does not appear to have been considered in either *Malmed I* or *II* and might have some impact on the analysis.

tion, Intervenors' petition, and Petitioners' motion for summary relief.

Ten years have passed since the creation of record on which the decisions in *Malmed I* and *II* were based; twenty years have passed since the provision mandating retirement of judges at age 70 became part of the Pennsylvania Constitution. The Pennsylvania Supreme Court in *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 65, 515 A.2d 1350, 1353 (1986), recognized that the passage of time might show that the means used to pursue legitimate government goals might "run too tight a gauntlet through due process."[16] Because of the passage of time, we believe that Petitioners' challenges to the constitutionality of the mandatory retirement of judges at age 70, based on the fourteenth amendment of the United States Constitution, warrant our consideration.

We do not agree with the Third Circuit's observation in *Malmed II* that in assessing the constitutionality of the provision mandating retirement of judges at age 70, the four reasons for recommending that constitutional provision, expressed by the Judiciary Subcommittee of the Preparatory Committee for the Pennsylvania Constitutional Convention of 1967, must be considered. These reasons are quoted in *Malmed II,* 621 F.2d

---

[16] The Supreme Court in *Craig* suspended the portion of Pa. R.C.P. No. 238 which provided for the mandatory imposition of prejudgment interest in certain instances to plaintiffs who received jury verdicts in excess of the defendant's settlement offer because in practice the assessment violated the fourteenth amendment. Five years earlier in *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 69, 436 A.2d 147, 156 (1981), the Supreme Court, facing the same constitutional challenges as were made in *Craig,* concluded that that same provision in Rule 238 bore a "fair and substantial relationship to its articulated goal" and did not violate the due process and equal protection clauses of the fourteenth amendment.

at 568, and can be summarized as follows: (1) increase in "judicial manpower" by bringing in younger judges and permitting retired judges to serve as senior judges;[17] (2) "eliminates unpleasantness of removing aged and disabled judges on an individual selective basis;" (3) prevention of harm by senile judges "offsets loss of judges who retain full powers past normal age;" and (4) "corresponds with current trend towards mandatory retirement in other public and private employments." The passage of time and experience may have shown that these reasons no longer exist or that mandatory retirement of judges at age 70 has not achieved the objectives sought.

What has occurred in the twenty years since the adoption of the mandatory retirement constitutional provisions is obviously factual in nature and cannot be determined without the aid of an evidential record. Actuarial tables showing normal life expectancy and studies demonstrating the "normal age" to which there is retention of full mental powers in 1988 could be used as evidence to refute the premise that age 70 is past the normal age at which "full powers" are retained. Evidence as to disuse or removal of mandatory retirement ages in public or private employment would tend to demonstrate there is no "current trend towards mandatory retirement." Evidence showing that competent judges decline to seek a senior judge position, because of the loss of status, might imply a lack of experienced judicial personnel in certain courts and offset any in-

---

[17] Article V, section 16(c) of the Pennsylvania Constitution provides: "A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by the rule of the Supreme Court." Elected judges who wish to be considered for temporary assignment as senior judges must have served at least six years as a judge prior to retirement. 42 Pa. C. S. §102.

crease in "judicial manpower" gained by bringing in younger judges. Data indicating the number of judges who, after investigation and recommendation by the Judicial Inquiry and Review Board, have been removed from office could be used to demonstrate that eliminating the "unpleasantness of removing aged and disabled judges on an individual selective basis" is no longer a legitimate government reason. These are only examples of the types of proof which would be necessary for Petitioners to prevail on their challenge to the constitutionality of Pa. Const. Art. V, §16(b) and are presented to illustrate the material issues of fact present in this case.

## IV.  CONCLUSION

Because we do conclude that the petition filed in this case does state a cause of action upon which the Pennsylvania constitutional provision mandating retirement of judges at age 70 could be declared unconstitutional under the United States Constitution, we propose that the Commonwealth's preliminary objections be overruled. As the discussion in section III indicates, there are issues of material fact which must be decided before the constitutionality of Pa. Const. Art. V, 16(b) can be resolved. Therefore, we propose that Petitioners' motion for summary relief be denied.

### PER CURIAM ORDER

NOW, November 3, 1988, the court being equally divided, petitioners' Motion for Summary Relief is denied. Respondent's Preliminary Objections are overruled; respondent shall file its answer within thirty (30) days from the date of this order.

It is also ordered that, pursuant to 42 Pa. C. S. §702(b), this court is of the opinion that this case involves a controlling question of law as to which there is a substantial ground for difference of opinion and that

an immediate appeal from this order may materially advance the ultimate termination of this case.

Judge CRAIG and Judge DOYLE join in this opinion.

President Judge CRUMLISH and Judge BARRY did not participate in the decision in this case.

———

CONCURRING OPINION BY JUDGE CRAIG:

This opinion signifies joinder in Judge PALLADINO's Opinion In Support of Denying Summary Relief and Overruling Preliminary Objections, and also offers a brief concurring supplement, with respect to:

    1.   The undesirable concept of discarding a state constitutional provision ratified by the electorate on the basis of a judicial determination that another provision of the same constitution has greater weight; and

    2.   The strength and weakness of the decision of the United States Court of Appeals on the federal constitutional questions.

## The Pennsylvania Constitution

A ratification vote of the Pennsylvania electorate adopted the Pennsylvania Constitution provision, Pa. Const. Art. V, §16(b), mandating the retirement of judges at age 70.

By ratification votes of no greater or lesser significance, the Pennsylvania electorate adopted Art. I, §1, the inherent rights provision, and Art. I, §26, the provision forbidding discrimination.

Therefore, it is indeed sound to reject the concept that the judiciary could have power to elevate any provision of the state constitution over another provision of the same fundamental law of the Commonwealth, when all provisions have been equally ordained by vote of the electorate.

The judiciary should avoid substituting its view as to the relative weight of various constitutional provisions, in place of the necessarily equal import of voter ratification of all provisions.

### The United States Constitution

Of course, a state court must recognize that a federal constitutional provision, adopted by the people of the nation, can prevail over a state constitutional provision ratified by the electorate of a single state.

However, because the decisions of the United States Court of Appeals, although persuasive, are not binding upon us as to the federal due process and equal protection issues presented here, overruling of the Commonwealth's preliminary objections is sound.

Moreover, in *Malmed v. Thornburgh,* 621 F.2d 565 (3d Cir.), *cert. denied,* 449 U.S. 955 (1980), the Court of Appeals, having reversed the district court on the legal matter of burden of proof, need not have entered judgment for the Commonwealth, as it did, but could have remanded the case for a new trial.

A decision that this court receive evidence in this case, giving attention to the persuasive view of the Court of Appeals as to the burden of proof, is therefore the proper course for this court to take in lieu of rendering a final judgment either way at this juncture.

In *Malmed,* the Court of Appeals stated:

In sum, the district court erroneously placed a burden on the appellants [Commonwealth] to rebut a limited argument by appellees [judges]. The correct approach would have been to require the appellees to prove that the Pennsylvania Constitutional Convention had no reasonable basis for believing the four reasons stated for the adoption of the mandatory retirement provision.

See Vance v. Bradley, 440 U.S. at 112, 99 S.Ct. at 951. . . .

*Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939 (1979) involved a federal law requiring foreign service personnel to retire at age 60.

Accordingly, the reception of evidence pursuant to the foregoing guidance is a sound course.

---

CONCURRING AND DISSENTING OPINION BY JUDGE COLINS:

I agree with the result reached in the opinion in support of denying summary relief and overruling preliminary objections insofar as it overrules the preliminary objections based upon its interpretation of the U.S. Constitution. I further agree with the conclusion that ADEA does not apply to elected judges within the Commonwealth of Pennsylvania.

However, I must strongly disagree with the position set forth in the opinion in support of denying summary relief and overruling preliminary objections that Article I of the Pennsylvania Constitution does not prohibit age discrimination such as that which is presently before the Court; *i.e.,* a determination based solely upon one's birthdate without any consideration of the individual's ability to perform his/her duties.

The "Declaration of Rights," contained in the Constitution of 1776, was enacted fifteen years prior to the adoption of the Bill of Rights contained in the U.S. Constitution. These rights were later incorporated into Article IX of the Constitutions of 1790 and 1838 and were again codified as Article I of the. Constitution of 1874.

It is clear, upon thorough analysis, that the protections afforded by the original Bill of Rights were meant to remain inviolate unless specifically retracted or abolished by future amendments to the Constitution.

The retirement provision, as adopted in 1968 by Article V, Section 16(b), does not, even arguably, purport

to abolish, amend, or delete the original Bill of Rights which has been the cornerstone of the Commonwealth's existence. Yet, the net effect of Article V, Section 16(b) is to confiscate a property right in employment, created by the voters and commissioned by the Governor, upon an individual's reaching his/her seventieth birthday.

The instant scenario, simply put, is that in a technical or "housekeeping" amendment, generated by the Constitutional Convention of 1968, a constitutional provision has been created which is in direct conflict with the protections contained in the Commonwealth's Bill of Rights.

This is a matter of first impression; however, the fact that those guarantees contained in the Bill of Rights may be superior to other constitutional guarantees was first recognized by our Supreme Court in *Armstrong v. King*, 281 Pa. 207, 126 A. 263 (1924), which declared that, although the Constitution "should contain only that which is fundamental, we are constantly made aware of the fact that many details are embodied in it which more properly belong in legislation . . . [b]ecause of these facts, all that is said in the Constitution is not of the same mandatory force; in the nature of things, some of the detailed provisions must be treated as directory only." *Id.* at 216, 126 A. at 266 (citations omitted). This argument was succinctly made in Section 2 of petitioner Katz' brief and should be the proper rationale for the decision of this Court.

It is beyond argument that the Constitution of 1968, insofar as it relates to mandatory age discrimination against elected judges, is not based upon a rational distinction. Yet, without this rational distinction, petitioner Katz and other dedicated servants in the future will be stripped of their salaries, offices, careers, and, in many instances, their dignity, despite having commissions signed by the Governor of the Commonwealth indicat-

ing that they were elected to serve in their offices to dates well beyond that of their forced retirement.

In conclusion, I reiterate my position that a constitutional amendment, enacted subsequent to the Commonwealth's original Bill of Rights cannot impair or impede any rights guaranteed by said bill unless the amendment clearly declares to do so.

In this opinion, I, by no means, mean to detract from the scholarly and prosaic opinion in support of denying summary relief and overruling preliminary objections. This is obviously an issue of first impression upon which reasonable people will differ.

This grave constitutional question must, and no doubt will, eventually be decided by the Supreme Court of the Commonwealth.

I would grant summary judgment in favor of the petitioners, as well as overrule the respondent's preliminary objections.

Judges McGINLEY and SMITH join in this opinion.