554 A.2d 896

Harold GONDELMAN, on his own behalf and on behalf of all others similarly situated, Leon Katz, Robert A. Wright, John F. Rauhauser, Jr., and James F. Clarke, Appellants/Petitioners at Nos. 49 and 97 Appellees at No. 98,

v.

COMMONWEALTH of Pennsylvania, Appellee/Respondent at Nos. 49 and 97 Appellant at No. 98.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1988.

Decided March 1, 1989.

Reargument Denied April 18, 1989.

452

Daniel P. Mazo, Henry T. Reath, Philadelphia, for Gondelman, et al.

Harold Gondelman, Pittsburgh, in pro per.

Robert W. Munley, Scranton, for amicus curiae Pennsylvania Trial Lawyers Ass'n.

Gregory R. Neuhauser, John G. Knorr, III, Philadelphia, for Com.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

Article V, section 16(b) of the Pennsylvania Constitution provides in part that "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years." Pa. Const. art. V, § 16(b).[1] The instant appeals present us with a question which, at first glance, seems rhetorical: whether the foregoing provision in our state constitution is itself constitutional.

This matter began with an original action brought by Harold Gondelman in the Commonwealth Court, seeking a judicial declaration that the mandatory-retirement provision in Article V, section 16(b) is invalid. As the basis for his suit, Gondelman asserted that the age-based retirement provision amounts to impermissible age discrimination, that it therefore violates fundamental liberties guaranteed by

---

1. Article V, Section 16, in its entirety, provides:

   § 16. **Compensation and retirement of justices, judges and justices of the peace**

   (a) Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

   (b) Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.

   (c) A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by rule of the Supreme Court.

   Pa. Const. art. V, § 16.

the Declaration of Rights set forth in in the Pennsylvania Constitution.

At the time Mr. Gondelman commenced his action, he was approximately sixty-five years of age. Although Mr. Gondelman is not a judge, but an attorney, his claim of harm was based on the proposition that, should he be appointed or elected to judicial office in 1989, he would be compelled to retire after just three years of service merely because he reached age seventy. According to Gondelman's complaint, the effect of Article V, section 16(b) is to deny to some individuals, solely because of their age, the opportunity of seeking or holding judgeships and enjoying the status and economic benefits that are concomitant to such office. As further support for his assertion that the age provision in Article V, section 16(b) constitutes invidious discrimination, he also contends that in no other branch of state government—executive or legislative—is an elected official compelled to retire at any particular age. In this connection, appellant Gondelman alleged that the challenged provision rests upon an unfounded premise that judicial officers undergo a significant diminution of their work-related capacities upon reaching the age of seventy.

The named defendant, Commonwealth of Pennsylvania, filed preliminary objections which included a demurrer, a challenge to Gondelman's standing, and a challenge to the court's subject matter jurisdiction. Prior to argument on the preliminary objections, four common pleas judges petitioned the Commonwealth Court for leave to intervene in the action as additional parties plaintiff, and were permitted to do so. The intervening judges were the Honorables Leon Katz, Robert A. Wright, John F. Rauhauser, Jr., and James F. Clark. Each of them will reach the age of seventy before the expiration of his current term of office. Desiring to complete the full remainder of their current terms, the intervenors joined in the discrimination challenge to the compulsory-retirement provision in section 16(b) of Article V. In that regard, the intervenors adopted or expanded upon the contentions already advanced by appellant Gondel-

man; they additionally averred that the age-based retirement mandate violates the Equal Protection and Due Process clauses in the Fourteenth Amendment of the United States Constitution.[2]

The plaintiffs filed a motion for summary relief, which the court scheduled for argument along with the defendant's preliminary objections. Upon consideration of those matters by the Commonwealth Court sitting *en banc*, the result was an order overruling the preliminary objections and also denying the plaintiffs' motion for summary relief.[3] Regarding the plaintiffs' motion, the Commonwealth Court concluded that they did state a cause of action for having the mandatory-retirement provision declared unconstitutional, but that there existed genuine issues of material fact which precluded summary relief. *Gondelman v. Commonwealth*, 120 Pa.Cmwlth. 624, ——, 550 A.2d 814, 822 (1988).

The court's order, although granting the defendant a specified period of time for filing a responsive pleading to the plaintiffs' complaint, set forth the view that the controversy involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. See Judicial Code, 42 Pa.C.S. § 702(b). We agreed with that view, and accordingly allowed the parties to immediately appeal to this Court for resolution of the central legal question involved.

Although we allowed both sides to appeal, and consolidated their appeals for argument and disposition, we shall for the sake of convenience refer to Gondelman and the intervenors as the "appellants" and to the Commonwealth as "appellee."

2. Since pendency of this action, additional judges have been permitted to intervene. These additional intervenors are the Honorables Charles A. Lord and William E. Pfadt.

3. In view of the intervention of the judges, the issue of Gondelman's standing was abandoned.

As noted, the appellants' challenges to the validity of the retirement provision in Article V, section 16(b) of our state constitution rest upon their argument that the provision amounts to prohibited discrimination, under both the federal constitution and our own state constitution. We commence with the appellants' assertions based on the Equal Protection and Due Process clauses of the Fourteenth Amendment; because, if the challengers are correct in either of those respects, we need not address their arguments which are predicated upon our state constitution.

## I.

The essence of the instant complaint is that there has been an arbitrary and discriminatory classification established in our state constitution to the prejudice of older judges. Without regard to the actual physical and mental health of the individual jurist, upon reaching the age of seventy, he is forced to retire on that birthdate. The effect of this mandatory provision is to terminate automatically the elective term which he is serving without consideration for the length of time remaining before its expiration or the mental and physical capacity of the jurist to complete that term.[4] When the judge attains the specified age, the office is deemed vacated and the election process to fill that vacancy is triggered. It is asserted that the instant classification created in Article V, section 16(b) of our state constitution violates the equal protection provision of the Fourteenth Amendment of the federal constitution and therefore may not be permitted to stand.

The Supreme Court of the United States has increasingly focused upon the concept of equal protection to guarantee fair treatment to each individual in the exercise of fundamental rights and to assure against distinction based upon impermissible criteria. Since the often repeated quote of Justice Holmes, in *Buck v. Bell,* 274 U.S. 200, 47 S.Ct. 584,

---

4. This provision does not preclude the jurists from performing judicial duties after reaching the mandatory retirement age. Pa. Const. art. V, § 16(c). Its effect is merely to trigger a vacancy in the particular elected term in which the judge is serving.

71 L.Ed. 1000 (1927), that the concept of equal protection should be considered as "the last resort of constitutional arguments," *Id.* at 208, 47 S.Ct. at 585, the Equal Protection Clause of the Fourteenth Amendment, and the equal protection concept which the Court has infused into the Fifth Amendment's Due Process Clause, have provided the constitutional tools for achieving legal equality among the diverse segments of our society.[5] This equal protection guarantee introduced a new concept in our constitutional analysis which governs all governmental actions which classify individuals for deferment benefits or burdens under the law. Unfortunately for the instant appellants, this protection has not been given the sensitivity by a majority of the United States Supreme Court as some of the members of that Court and other legal scholars might wish.

## A.

■ We begin the analysis with the recognition that an obvious discriminatory intent is rarely evident on the face of the statute or regulation. Thus the inquiry must focus upon an examination of the classification made and the proffered legislative purpose. The tighter the fit, the less likely a judicial tribunal will determine that the proferred legislative purpose serves merely as a guise for a discriminatory or arbitrary purpose. In this area judicial tribunals are ever sensitive that they are intruding in the traditional legislative domain of law making. This is a particularly significant concern in the instant appeal where we are focusing not on a legislatively designed classification, but rather on one adopted by the people of this Commonwealth to determine who may serve as judges in their courts.

5. The concepts of due process and equal protection of the law were intended to be a restraint upon the governmental intrusion on personal liberties secured by the constitution. See the dissenting opinion by Warren, C.J., and Douglas, J. in *Hutcheson v. U.S.*, 369 U.S. 599, 637, 82 S.Ct. 1005, 1025, 8 L.Ed.2d 137 (1962). The Fifth Amendment secured these rights to all citizens against trespass by the federal government. Years later with the enactment of the Fourteenth Amendment those rights became protected against interference by the states.

Absent a demonstration of the implication of a fundamental right, *see, e.g., Skinner v. Oklahoma, ex rel. Williamson,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), or a suspect class, *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), this latter consideration would argue strongly for the least intrusive judicial assessment, which would be to presume the provision to be valid and sustain it if the classification drawn is rationally related to a legitimate state end. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174–175, 101 S.Ct. 453, 459–460, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).

Any concern for a functional separation of powers is, of course, overshadowed if the classification impinges upon the exercise of a fundamental right, or affects a suspect class. *Schweiker v. Wilson, supra; Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). Appellant judges urge that a higher degree of scrutiny is mandated because the classification discriminates against older judges. It is asserted that the classification in question constitutes age discrimination. The Supreme Court has rejected age as being viewed as a suspect class as of this point in time, *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Vance v. Bradley, supra,* even though persuasive arguments have been offered to support such a position. *See, e.g., Murgia, supra.* (Marshall, J., dissenting.)

In *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307 at 313–14, 96 S.Ct. at 2567, 49 L.Ed.2d 520 (1976), the Court stated:

While the treatment of the aged in this nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities.

... [O]ld age does not define a 'discrete and insular' group, *U.S. v. Carolene Products Co.,* 304 U.S. 144, 152–153, n. 4 [58 S.Ct. 778, 783–784, n. 4, 82 L.Ed. 1234 (1938) ], ... in need of 'extraordinary protection from the majoritarian political process.' Instead, it marks a stage that each of us will reach if we live out our normal span.

In the *Murgia* decision, the majority also expressly rejected "the proposition that a right of governmental employment *per se* is fundamental." *Id.* at 313, 96 S.Ct. at 2566, *citing San Antonio School District* 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973); *Lindsey v. Normet,* 405 U.S. 56, 73, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

In a dissenting opinion in *Murgia,* Justice Marshall responded in a persuasive dissent:

Although we have called the right to work 'of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure,' ..., the Court finds that the right to work is not a fundamental right. And, while agreeing that 'the treatment of the aged in this nation has not been wholly free of discrimination' the Court holds that the elderly are not a suspect class.

*Id.* at 317–18, 96 S.Ct. at 2569.

Notwithstanding the appealing tone of this dissent, the majority's position articulated in *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), leaves little question that a rational basis analysis is the acceptable standard for assessing a forced retirement based solely upon a prescribed age without offending equal protection concerns.

In *Vance,* where the Court considered the constitutionality of a maximum retirement age of sixty for Foreign Service officers, the teaching of *Murgia, supra,* was affirmed. The Court in *Vance* reiterated that: a) the aged, as a group, are not entitled to special judicial protection; and b) the rational basis test is the appropriate standard to be applied where a classification is based on age. *Id.* at 97, 99 S.Ct. at 943. In determining that the legislative action in *Vance* could be sustained, the court observed:

> Congress was intent not on rewarding youth *qua* youth, but on stimulating the highest performance in the ranks of Foreign Service by assuring that opportunities for promotion would be available despite limits on the number of personnel classes and on the number of positions in the Service. Aiming at superior achievement can hardly be characterized as illegitimate, and it is equally untenable to suggest that providing promotion opportunities through the selection-out process and through early retirement does not play an acceptable role in the process. *Id.* at 101, 99 S.Ct. at 944.
>
> ... Because Congress desired to maintain the competence of the Foreign Service, the mandatory retirement age of 60 rationally furthers its legitimate objective.... *Id.* at 108–09, 99 S.Ct. at 948.

Significantly, the Court further stated "[e]ven if the classification involved is to some extent underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" *Id.* at 108, 99 S.Ct. at 948 (Citations omitted).

We are therefore constrained to conclude that neither the appellant judges nor the amici[6] have offered a legitimate basis, in view of the decisions of the U.S. Supreme Court, to

---

6. Amici, the Pennsylvania Trial Lawyers Association and the Pennsylvania Defense Institute, argue that the mandatory retirement provision is illegal age discrimination, violative of the United States Constitution. Amicus, the Philadelphia Bar Association, incorporates this assertion into its argument by adopting the arguments of the appellant judges.

justify employing a heightened scrutiny of the alleged discriminatory and/or arbitrary nature of the instant provision.

## B.

■ The same provision was called to task with the identical challenges as presented in this appeal in *Malmed v. Thornburgh,* 621 F.2d 565 (3rd Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). That court applying the rational basis test concluded that an equal protection challenge could not be sustained. The Circuit Court opinion was in response to a District Court finding that Article V, section 16(b) conflicts with the equal protection accorded under the Fourteenth Amendment of the United States Constitution. In rejecting the District Court's assessment, the Circuit Court properly noted that a court may even hypothesize the motivations of the enacting body to find a legitimate objective promoted by the challenged provision. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 780, 95 S.Ct. 2457, 2474, 45 L.Ed.2d 522 (1975); *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 487–90, 75 S.Ct. 461, 464–66, 99 L.Ed. 563 (1955). In any event, the Circuit Court noted the reasons for this provision were clearly articulated during the convention and offered to the public in securing their vote for this amendment.[7] These reasons

7. Article V, section 16(b), was the result of many hours of thoughtful discussion and debate by the Judiciary Subcommittee of the Preparatory Committee for the Constitutional Convention in Pennsylvania in 1967–68. Reference Manual No. 5 prepared by that Judiciary Subcommittee cited the following arguments in support of mandatory retirement at a specified age:

° substantially increases judicial manpower when a plan for part-time post-retirement service exists. By continually bringing in younger judges while retaining the part-time services of willing and able retired judges, a system of mandatory retirement plus post-retirement service helps solve the pressing problem of court congestion and delay. As mentioned previously, Pennsylvania already has provided for voluntary post-retirement service.

° eliminates unpleasantness of removing aged and disabled judges on an individual selective basis. Mandatory retirement is more impersonal than individual removal; everyone is treated alike. The

were quoted in the opinion of the Third Circuit, *Malmed,* 621 F.2d at 567–69, and repeated in the opinion of the Commonwealth Court in this appeal. Those reasons have not been, nor can they be, challenged on the ground that they do not have a reasonable relationship to a legitimate state purpose. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

> If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730 (1913)]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)].

The Commonwealth Court in overruling the preliminary objections concluded that appellants could prevail if they were successful in proving that the stated objectives of Article V, section 16(b), failed to accomplish the intended purpose. The Commonwealth Court relied upon the allegations that the experience following the adoption of Article V, section 16(b), has demonstrated that the provision did not

> difficulty and unpleasantness of determining which judges are senile and which are not is largely avoided.
> ° prevention of harm by few senile judges more than offsets loss of judges who retain full powers past normal age. Besides, the services of able retired judges may be secured by a provision for post-retirement service.
> ° corresponds with current trend towards mandatory retirement in other public and private employments. There appears to be no good reason why judges should be treated differently from other public officials, teachers, executives, and other professional people who are subject to compulsory retirement.
> Judiciary Subcommittee of the Preparatory Committee for the Pennsylvania Constitutional Convention, Reference Manual No. 5 at 203–04 (1968).

serve the purposes it was intended to achieve. Contending that this created a material issue of fact as to whether there was a reasonable relationship to a legitimate state interest, the Commonwealth Court overruled the preliminary objections and directed that appellants should have an opportunity to prove their contentions. Illustrative of the allegations sought to be proven were: a) that actuarial tables showing normal life expectancies and studies demonstrating the "normal age" to which there is retention of full mental powers in 1988 could be used as evidence to refute the premise that age seventy is past the normal age at which "full powers" are retained; b) that there is no longer a trend to use mandatory retirement ages in public or private employment; c) that the concept of senior judge status has proven to be unsatisfactory and degrading and therefore does not serve to build a reserve of judicial manpower;[8] and, d) that the experience of the Judicial Inquiry and Review Board has established that it can effectively protect the system on an individual basis from incompetent jurists, which is more desirable than an overinclusive prophylactic approach.

Accepting, for the consideration of this contention, that these positions could be established, they would not be relevant to the constitutional analysis presented. In applying the equal protection concept of the Fourteenth Amendment, the United States Supreme Court made clear that we must seek only the assurance that the intent of the classification at issue bears some fair relationship to a legitimate public purpose. *City of Cleburne v. Cleburne Living Center; Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *San Antonio School District v. Rodriguez, supra; Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). If the selected method is not the most effective or efficient method to achieve the State

8. It is significant to note that this assertion raised by appellants is not constitutionally based. The senior judge status is regulated by the Pennsylvania Rules of Judicial Administration of the Supreme Court, *see,* Pa.R.J.A. No. 701, and therefore, the Supreme Court is the appropriate body to amend such rules if they are determined to be unsatisfactory.

objective, the people may remedy that by amending that provision.[9] *See Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975); *Cali v. City of Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962); *Appeal of Obradovich,* 386 Pa. 342, 126 A.2d 435 (1956).

The argument that classifications premised upon old age should not be accorded a heightened scrutiny is admittedly founded upon the simplistic premise of the universal quality of that status. Notwithstanding the myriad of differences that exist within our society, we all will share the experience, if we have the good fortune to enjoy longevity. Thus it is assumed that the majoritarian tendency to trammel upon the rights of the minority or to ignore its particular needs would not be applicable to such a group. The questionable assumption is whether this affinity is necessarily fully appreciated in the earlier stages of our lives. Notwithstanding this legitimate philosophical issue, federal precedent is clear that the standard of rationality satisfies the inquiry in this area.[10] In reaching this conclusion we are reminded of the words of Judge Goldberg in a similar setting:

> I write today, at 82 years of age, with a heavy pen and an even heavier heart. The Honorable Judge William Hatten has served his district ably for over 20 years. His ample competence is stipulated by all parties. Yet today we are compelled by precedent to inform Judge Hatten that he may not be a candidate for reelection, simply because, tomorrow, he will celebrate his seventy-fifth birthday.

9. Appellants have offered many thoughtful reasons why the age 70 limit should be reconsidered. This opinion is not to be construed as a rejection of these arguments, but merely a recognition that the body that should make that decision is the people of the Commonwealth of Pennsylvania.

10. The Circuit Courts have affirmed on this issue in several decisions. *See e.g., Malmed v. Thornburgh,* 621 F.2d 565 (3rd. Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *Trafelet v. Thompson,* 594 F.2d 623 (7th Cir.), *cert denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979); *Rubino v. Ghezzi,* 512 F.2d 431 (2d Cir.), *cert. denied,* 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975).

I sincerely wish that our birthday message could be a happier one.  However, the people of Texas have chosen youth over wisdom, and we are not free to meddle with their choice: the district court heard unrebutted evidence that judicial ability declines with age; and, more importantly, the Supreme Court has spoken twice, though summarily, in cases with virtually identical facts.

Though there is some merit to Judge Hatten's argument that Art. V, § 1–a, violates fundamental ... rights, our hands are tied by the Supreme Court.  Perhaps unfolding years will open eyes that are now closed.  Until then we are bound by precedent to affirm.

*Hatten v. Rains,* 854 F.2d 687, 689–90 (5th Cir.1988). (Footnotes omitted.)

## II.

■■■  Having concluded that Article V, section 16(b) does not offend a federally protected right, we now turn to the interesting argument raised by appellants which calls upon us to conclude that this provision is in conflict with the Declaration of Rights set forth in Article I of the constitution of this Commonwealth.  The argument begins with the provision that Article I, section 1 of our constitution guarantees all citizens of the Commonwealth equal protection of the laws.  This section provides:

**§ 1.  Inherent rights of mankind**

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

It is then noted that this section is reinforced by Article I, section 26 which provides:

**§ 26.  No discrimination by Commonwealth and its political subdivisions**

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of

any civil right, nor discriminate against any person in the exercise of any civil right.

Pa. Const. art. I, § 26.

Premised upon the conclusion that Article I sets up a standard to which the other articles of our constitution must comply, it is argued that any provision of our constitution must be recognized as being subordinate to the mandate of Article I and interpreted in accordance therewith.[11] This theory recognizes that we in this Commonwealth in dispensing the reservoir of power consigned to the states under our system of federalism, *see, Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *United States v. Sprague*, 282 U.S. 716, 51 S.Ct. 220, 75 L.Ed. 640 (1931), have determined that the rights articulated in Article I are to be recognized as being inherent in the right of a resident of this Commonwealth and insulated against the governmental power of this Commonwealth. As explained by this Court in *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.*, 512 Pa. 23, 28–29, 515 A.2d 1331, 1334 (1986):

> The primary purposes of a constitution are to establish a government, define or limit its powers and divide those powers among its parts. U.S. Const. amend. X; J. Nowak, R. Rotunda, and J. Young, *Constitutional Law*, 121 (2d Ed.1983). *See generally* 16 Am.Jur.2d, *Constitutional Law*, § 6 (1979). The United States Constitution established a government of limited and enumerated powers. Consequently, the national government possesses only those powers delegated to it. J. Nowak, *supra*, at 121. *See generally* 16 Am.Jur.2d at § 278. State constitu-

---

11. It has been recognized that Article I, sections 1, 9 and 26 combine to provide the counterpart of the federal due process and equal protection provisions. As noted by Judge Woodside:

> Article 1, § 9, of the Constitution of Pennsylvania provides: 'Nor can an accused be deprived of his life, liberty or property unless by the judgment of his peers or the law of the land.' Sections 1 and 26, along with Section 9, provides for 'due process' and 'equal protection' generally, although not in language as specific as the Fourteenth Amendment. *See*, R. Woodside, Pennsylvania Constitutional Law at 21 (1985).

tions, on the other hand, typically establish governments of general powers, which possess all powers not denied by the state constitution. J. Nowak, *supra*, at 121. *See generally* 16 Am.Jur.2d at § 16. Our state constitution functions this way and restrains these general powers by a Declaration of Rights. R. Woodside, *supra*, at 3, 113; *Commonwealth v. Wormser*, 260 Pa. 44, 46, 103 A. 500, 501 (1918) (the legislature may enact all laws not forbidden by the state constitution).

■ We agree with the general proposition that those rights enumerated in the Declaration of Rights are deemed to be inviolate and may not be transgressed by government. *Spayd v. Ringing Rock Lodge No. 665, Brotherhood of Railroad Trainmen*, 270 Pa. 67, 113 A. 70 (1921). The concept of the sanctity of those rights set forth under Article I is expressly articulated in Article I, section 25 which provides:

### § 25. Reservation of powers in people

To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

Pa. Const. art. I, § 25.

■ Thus appellants' argument would be convincing if its focus was directed at a legislative enactment, an executive regulation or a judicial decision. Here however the challenge relates to a pronouncement of the people. Clearly Article V, section 16(b), comes from the same source as the rights enumerated in Article I. It is absurd to suggest that the rights enumerated in Article I were intended to restrain the power of the people themselves. Such a proposition loses sight of "the basic overriding principle of American government—that all power is in the people." R. Woodside, Pennsylvania Constitutional Law (1985):

The Constitution sets forth those rights and powers inherent in the people that are delegated to government and those powers which are reserved and retained by the people. In a sense, it is a power of attorney by the people

to their designated officials acting as agents for the people and delineating the authority granted and the rights reserved. The provisions of a constitution specifying the rights reserved and retained by the people are generally referred to as the 'Bill of Rights,' or in Pennsylvania the 'Declaration of Rights.'

*Id.* at 3.

The sacrosanct quality appellants would have us ascribe to Article I does not further the purposes of the argument they seek to advance. To the contrary, it undercuts their position.

Accepting their premise that within the penumbra of rights articulated in Article I, the right to classify based upon age was withheld from government, such an action would signify that the people had determined that *government* should be precluded from making such a classification. Unless there is a federally protected right offended, the people, by way of amendment, are free to convey a power to their government if they choose to do so. *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474 (1969). This view is reinforced by Article I, section 2, which provides:

**§ 2. Political powers**

All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

Pa. Const. art. I, § 2.

Section 2 expressly recognizes the inherent power of the people reserved in Article I as well as their "indefeasible right to alter, reform or abolish their government in such manner as they may think proper." Clearly within the reservoir powers embraced within Article I is the right of the people to determine the conditions under which those entrusted with dispensing the judicial power of the Commonwealth shall serve. Moreover, the people, from time to

time, may determine it to be in the best interest of this Commonwealth to change or alter those qualifications. The instant challenged classification as to age merely represents this type of action.

The restraint imposed under Article I is not upon the people in forming their government, but rather upon the government in the discharging of its functions under the direction of that constitution. Restated, Article I does not restrain the power of the people, it restrains the governmental structure that the people have created. Thus even if the appellants are correct in their assertion that implicit in the various provisions of Article I there is a prohibition against classifications predicated upon age, such a prohibition would only restrain governmental classifications, but would not prevent the people from using such classifications in structuring the government itself.[12] Article V, section 16(b), does not represent governmental action, but rather is a product of the people in the structuring of their government. Thus the fundamental fallacy of appellants' argument is the failure to distinguish between the power of the people and the actions of the government created by the people. In forming the government of this Commonwealth, the only restraint upon the people is that imposed under our federal constitution. Having determined that the challenged classification does not offend federal constitutional mandate, it cannot be said that the people of this Commonwealth could not be permitted to employ such a classification.

Accordingly, the Commonwealth's preliminary objections are sustained and the action is dismissed.

STOUT, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., files a dissenting opinion.

12. In view of our decision, we need not determine if in fact there is a prohibition against governmental classifications based on age.

PAPADAKOS, Justice, dissenting.

Although I fully understand the rationale used by Mr. Chief Justice Nix in deciding that the people of Pennsylvania have the right and power to discriminate against themselves on the basis of age, I must dissent because I believe that the expansion of fundamental civil rights by our enlightened courts in the recent past now mandates that the right to be free from discrimination on the basis of age is a fundamental civil right that is protected by Article I, Section 26 of our Pennsylvania Constitution wherein it states:

§ 26. *No Discrimination by Commonwealth and its political subdivisions.*

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

The majority make much of the fact that Article I, Section 26, restricts discriminatory actions by *government* and does not prevent the people, in whom ultimate power reposes, from exercising any and all forms of discrimination not prohibited by the Federal Constitution. Perhaps such an analysis is true under certain conditions. But I believe it is not relevant to this case.

Article V, Section 16 of our Constitution provides, in relevant part:

(a) Justices, judges and justices of the peace *shall be retired* upon attaining the age of seventy years.... (Emphasis added).

This section does not say that jurists shall retire; rather, they *shall be retired*—who is to effect the retirement of jurists if it is not *government?* I read this section as imposing upon *government* the obligation of removing jurists from office solely on the basis of age. Such action by *government,* as admitted by the majority, is prohibited by Article I, Section 26 of the Pennsylvania Constitution which is, in effect, part of the Bill of Rights of all of the people.

I would reverse the Commonwealth Court.