521 Pa. 571 (1989)
559 A.2d 489
In re Matter of Madame Justice Juanita Kidd STOUT.
The Honorable Juanita Kidd STOUT and Nancy M. Sobolevitch, Petitioners at No. 61,
v.
COMMONWEALTH of Pennsylvania ex rel. Ernest D. PREATE, Jr., Petitioner at No. 73.
Supreme Court of Pennsylvania.
Argued April 12, 1989.
Decided May 18, 1989.
*572 *573 Charles W. Johns and Howard M. Holmes, Philadelphia, for A.O.P.C.
Samuel E. Klein, Frank L. Corrado, Jr., and Harold E. Kohn, Philadelphia, for Justice Stout as Intervenor.
Scott L. Vernick and Louis W. Fryman, Philadelphia, for amicus-Philadelphia Bar Assoc. in Support of Mme. Justice Stout.
Ernest D. Preate, Jr., Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen. and John G. Knorr, III, Chief Deputy Atty. Gen., for the Com.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT
PAPADAKOS, Justice.
The matters before us for disposition are the Quo Warranto and Mandamus action commenced by the Attorney General of Pennsylvania seeking to remove the Honorable Juanita Kidd Stout from the office of Justice of the Supreme Court of Pennsylvania, as well as the non-adversary "Petition for Declaratory Relief" filed by the Court Administrator of Pennsylvania requesting our assumption of original jurisdiction and a declaration of the rights of Madame Justice Stout and advice as to whether to continue Madame Justice Stout on the payroll. Madame Justice Stout has *574 been granted leave to intervene in the matter commenced by the Court Administrator since her rights are at issue and she is deemed to be an indispensable party. All matters were consolidated and ordered brought before this Court for argument on April 12, 1989.
In view of the great public importance attached to the issue suggested by Madame Justice Stout, the Court requested and Madame Justice Stout voluntarily agreed, to remove herself from any participation in and consideration of judicial determinations on and after March 7, 1989, and until her status was determined.
The basic issue before us arises from facts not in dispute. On October 19, 1987, former Justice William D. Hutchinson resigned as Justice to accept an appointment as judge on the Third Circuit Court of Appeals. Thus, a vacancy was created which, pursuant to constitutional mandate, was eventually filled on February 8, 1988 by the appointment of the Honorable Juanita Kidd Stout by the Governor of Pennsylvania and confirmed by the Senate. The commission issued was for a term ending on the first Monday of January, 1989. Such a term was established upon the belief that a valid election to fill the vacancy could be held in 1988.
By our decision in Sprague v. Casey, 520 Pa. 38, 550 A.2d 184 (1988), we set aside the election for appellate courts scheduled for 1988 and directed that any vacancy in any of our courts had to be filled in elections held in a municipal rather than a general election year, i.e., 1989. We also directed in footnote 8 of the Sprague opinion, "The Secretary of the Commonwealth is directed to amend the term of office in the commissions of the two appointed jurists consistent with this opinion." p. 193. In compliance with this directive, the Secretary of the Commonwealth reissued a commission to Madame Justice Stout for a term commencing on February 8, 1988 and ending on the first Monday of January, 1990. In Sprague we took the position that the Constitution dictates the exact length of the term of office for which an appointee to fill a vacancy may serve and that the Governor and Senate cannot alter or vary that term of *575 office. Thus we recognized that an appointee might die, resign, be removed or suffer such other impediment as reaching the age of retirement which might prevent the appointee from completing the term of office established in Article V, Section 13(b).
On March 6, 1989, Madame Justice Stout reached the age of seventy years and, armed with a corrected commission from the Governor, questioned whether her age was an impediment which would prevent her from completing the full term of office to which she had been appointed. For various reasons with which we shall hereinafter deal, she believes that appointees to the bench are not subject to the mandatory retirement age expressed in the Constitution at Article V, section 16(b), which reads in pertinent part: "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years."
To bring the issue formally before the Court for a speedy resolution, the Court Administrator of Pennsylvania Courts was directed to file a petition with us invoking our original and plenary jurisdiction, asking that we issue declaratory relief with respect to the continued payment of compensation to Madame Justice Stout and to determine her continued right to sit on this Court. This petition was filed on March 14, 1989, and by separate petition, Madame Justice Stout filed her application requesting leave to intervene in the Court Administrator's declaratory judgment action, alleging that since her rights were to be adjudicated, she was an indispensable party.
On March 27, 1989, the Honorable Ernest D. Preate, Jr., the Attorney General of the Commonwealth, instituted a proceeding in quo warranto and mandamus before the Commonwealth Court, challenging Madame Justice Stout's right to continue to exercise any duties as a Justice of the Supreme Court and asked that a writ of mandamus be issued to the Court Administrator directing the cessation of payments of compensation to Madame Justice Stout as a Justice of the Supreme Court of Pennsylvania. The Court Administrator and Madame Justice Stout petitioned us asking *576 that we assume plenary jurisdiction over the Attorney General's quo warranto and mandamus action, and that we consolidate this action with the Court Administrator's action and dispose of both actions in one proceeding.
On March 31, 1989, we entered our order granting Madame Justice Stout's petition to intervene and we granted the Court Administrator's petition to consolidate her action with the Attorney General's action filed in the Commonwealth Court. Accordingly, we ordered the Commonwealth Court action transferred to our docket and took jurisdiction over both actions and listed the cases for oral argument at our Philadelphia Session on April 12, 1989.
The facts are not in dispute. The Attorney Generaland Madame Justice Stout have each moved for summary judgment in their favor. The parties have filed their briefs on the legal questions raised and a brief in support of Madame Justice Stout by the Philadelphia Bar Association as Amicus Curiae has been accepted. The matters were argued before the Court on April 12, 1989, and are now ripe for disposition.
Since the fundamental question raised by all parties concerns Madame Justice Stout's right to continue in public office we are obliged to test that right via the quo warranto proceeding instituted by the Attorney General in which the burden of proving the right to office rests with Madame Justice Stout. Carrol Twp. Sch. Bd. Vacancy, 407 Pa. 156, 180 A.2d 16 (1962); Commonwealth ex rel. Kelley v. Keiser, 340 Pa. 59, 16 A.2d 307 (1940).
As Mr. Justice Nix (now Mr. Chief Justice Nix) reiterated for the majority in Spykerman v. Levy, 491 Pa. 470, 421 A.2d 641 (1980), "Historically, Pennsylvania courts have held that the quo warranto action is the sole and exclusive method to try title or right to public office." The writ is addressed to preventing a continued exercise of authority unlawfully asserted and can be brought to oust a de jure, as well as a de facto, officer from their public positions. Spykerman; State Dental Council and Examination Board v. Plock, 457 Pa. 264, 318 A.2d 910 (1974); Pleasant *577 Hills Boro. v. Jefferson Twp., 359 Pa. 509, 59 A.2d 697 (1948).
We have also held that the burden of proof to show good title to office in quo warranto proceedings where the action has been instituted by the Commonwealth, is upon the respondent. Commonwealth ex rel. Kelley v. Keiser, 340 Pa. 59, 16 A.2d 307 (1940). The burden is not met by producing a commission from the Governor where the challenge is to some personal qualification of the respondent. Kelley v. Keiser.
The Attorney General challenges Madame Justice Stout's right and title to office by invoking the mandatory retirement section of Article V, Section 16(b) of the Constitution. The pertinent language is short and straightforward, without embellishment, expansion or ambiguity, and provides: "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years." The Attorney General maintains that all members of the judiciary, whether appointed, elected or retained are required by Section 16(b) to be retired upon reaching the age of seventy years and that Madame Justice Stout was required to be retired on March 6, 1989, upon reaching the age of seventy years.
Madame Justice Stout, as Respondent, seeks to avoid the clear impact of the mandatory language of Section 16(b) on the assertion that gubernatorial appointees are exempt from the mandatory retirement provisions of Section 16(b) by virtue of Section 13(a); that she falls within the ambit of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., a federal act which overrides our constitutional bar by reason of the Supremacy Clause of the United States Constitution; and on equal protection grounds. We will address each claim separately.

Applicability of Mandatory Retirement Provision of Section 16(b) to Appointed Members of the Pennsylvania Judiciary
Madame Justice Stout first asks us to determine whether there are any limits to the mandatory language of *578 Section 16(b) requiring retirement upon the attaining of age seventy by members of the judiciary. In support of finding such a limitation, Madame Justice Stout notes that she is an appointed justice, appointed to the Court pursuant to Article V, Section 13(b) of the Constitution to fill the vacancy created on the Court when Mr. Justice William D. Hutchinson resigned his commission.
Although Article V, Section 13(b) requires that "the person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs . . ." (which in this case would have been January 1, 1990), the Governor appointed Madame Justice Stout to a term ending on the first Monday of January following a general election (January, 1989) and the Senate confirmed same.
We corrected this misconception in Sprague v. Casey, supra, where we held that the election scheduled for 1988 was not in a municipal election year and that an election for the Supreme Court vacancy could not be held until 1989.
Pursuant to our decision in Sprague, we ordered that the term of the office to which Madame Justice Stout had been appointed be extended to the first Monday in January of 1990 to comply with the provisions of Article V, Section 13(b) of the constitution which sets the end of the term as the "first Monday of January following the next municipal election more than ten months after the vacancy occurs." In compliance therewith, a second commission was issued to Madame Justice Stout by the Governor reflecting the correct termination date of the term. Madame Justice Stout argues that because the termination date listed in her commission exceeds her seventieth birthdate, that an inconsistency exists. Must she retire on her seventieth birthday pursuant to Section 16(b) or may she complete the term as set forth in the commission as provided in Section 13(b)? In support of the claim that the provisions of Section 13(b) should take precedence over the mandatory retirement provisions of Section 16(b), Madame Justice Stout advances several arguments.
*579 It is argued that since the constitutional language of Section 13(b) specifically defines the length of the term of office without regard to the mandatory retirement provision, this lack of reference to the mandatory retirement section should prevail over the provisions of Section 16(b).
Were this but true, then a jurist who was elected at age 69 could serve a full ten years to age 79 since Article 5, Section 15(a) provides: "The regular term of office of justices and judges shall be ten years . . . ." without regard to the mandatory retirement provision, and this lack of reference to the mandatory retirement section should prevail over the provisions of Section 16(b). We have laid this argument to rest in our recent decision in Gondelman v. Pennsylvania, 520 Pa. 451, 554 A.2d 896 (1989), wherein we emphatically held constitutional the mandatory retirement provision at age seventy and held that jurists after attaining said age could serve only in a senior judge capacity.
Furthermore, the issue was met head on in Firing v. Kephart, 466 Pa. 560, 353 A.2d 833 (1976), wherein we held that a district justice must retire upon attainment of age seventy, and that his term of office ended at such age so that he was not entitled to salary for the balance of the unexpired term.
Firing was retained as a district justice, with his retention term beginning in January 1970. He reached the mandatory retirement age on September 29, 1973, and while he voluntarily retired, he maintained that he was entitled to his compensation as a district justice for the balance of the six year term for which he had been retained.
In support of his claim, he argued that his salary could not be diminished during the term of office pursuant to Article V, Section 16(a) of the Constitution which provides: "Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."
*580 District Justice Firing argued that his term would not expire until the date on his commission (at the end of a six year term of office) and that under Section 16(a) he was entitled to his full salary for this length of time, notwithstanding his retirement mandated by Section 16(b). We rejected this construction noting that in interpreting constitutional provisions, we do so in their popular sense as understood by the people who adopted them and that we try to interpret them insofar as possible in terms of their spirit and intention. See also, Berardocco v. Colden, 469 Pa. 452, 366 A.2d 574 (1976); Commonwealth ex rel. Attorney General v. Beamish, 309 Pa. 510, 164 A. 615 (1932).
Reading the related provisions in connection with one another we concluded their proper meaning was that a member of the Pennsylvania judiciary reaches his or her seventieth year, according to the rule of the common law, that is on the day before his or her birthday, (see Gerson v. Daly, 337 Pa. 346, 11 A.2d 148 (1940)), and that when a jurist reaches the age of seventy years his or her term expires. We also noted that retirement, involuntary removal and demise all cause a vacancy to occur and cause a term of office to expire. Firing v. Kephart, 466 Pa. at 566, 353 A.2d at 837 (1976).
In discussing the application of Section 16(b) to the retention term of a district justice, we noted that the Constitution was not specific in setting forth that such retained district justices are required to retire upon attaining the age of seventy years, as the Constitution is with regard to the mandatory retirement of retained justices and judges. Section 15(b) of Article V, of the Constitution specifically provides that: "At the expiration of each term a justice or judge shall be eligible for retention as provided herein, subject only to the retirement provisions of this article."
In concluding that this section, which omitted any reference to the mandatory retirement of district justices, nevertheless did not affect the mandatory applicability of Section 16(b) to district justices, we said: "It is true that this retention provision does not apply to justices of the peace, *581 but we do not think that the framers could have intended the absurd result that all justices, judges, and justices of the peace would be subject to the retirement provision of Section 16(b), but that only justices and judges retained under Section 15(b) would have less than a regular term if mandatorily retired. Rather, Section 15(b) provides a clear guide to the meaning and application of Section 16(b)." Firing v. Kephart, 466 Pa. 560, 568, 353 A.2d 833, 837 (1976).
Thus, Madame Justice Stout's claim that her term of office is governed by the provisions of Section 13(b), which omits reference to mandatory retirement, must fail. As we held in Firing, Section 16(b) is applicable to all justices, judges and justices of the peace. Its terms are mandatory and they express in the simplest language possible the absolute will of the sovereign people of the Commonwealth that jurists must retire upon reaching their seventieth birth-date. Section 13(b), like Section 15(b), is not read as a specific provision which takes precedence over Section 16(b), rather both serve as guides in applying the mandatory retirement provisions of Section 16(b).
Madame Justice Stout also argues that public policy reasons mitigate in favor of reading Section 15(b) in such a way that a full complement is maintained on the Court at all times during an appointive term, such as hers. It is true that the framers of the Judiciary Article recognized that in order to ensure an efficient court system, a vacancy which results when an elected incumbent dies, resigns, retires or is removed should not remain unfilled until a new judiciary officer can be elected. Berardocco, 469 Pa. at 457, 366 A.2d at 567. We recognize that the framer's desire to see to it that the judiciary is not handicapped in such situations compelled them to draft Section 15 and that appointive members to the judiciary serve as respected and valued members on our courts. This is not to say, however, that such appointees are favored with greater rights than other members of the judiciary. Appointees must comply with all the requirements of our Constitution including mandatory *582 retirement. In fact, in the past we have seen no reason to distinguish between mandatory retirement, voluntary retirement, involuntary removal or demise. All these circumstances are held to operate as an expiration of a term and create a vacancy. Berardocco; Firing; Barbieri v. Shapp, 476 Pa. 513, 383 A.2d 218 (1978); Creamer v. Twelve Common Pleas Judges, 443 Pa. 484, 281 A.2d 57 (1971) (Opinion of Mr. Chief Justice Bell, joined by Mr. Justice O'Brien and Mr. Justice Roberts).
We do not find that Madame Justice Stout's arguments can overcome the mandatory effect of Section 16(b). As a matter of our own constitutional law, this section applies to all jurists upon their attaining the age of seventy and it must be applied here as it was applied in our recent case of Gondelman, supra. Any other reading of this section would put us in the precarious position of extending a constitutionally fixed term of judicial office, which we cannot do. However appealing the power to do so might appear under even extenuating circumstances, we are bound to give effect to the clear language of the Constitution.
In the alternative, Madame Justice Stout maintains that if we apply the mandatory retirement section to her we will be violating federal constitutional and statutory law. These considerations will be discussed below.

Applicability of Age Discrimination In Employment Act, 29 U.S.C. § 621 et seq. to Judicial Appointees
The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., makes it unlawful discrimination to terminate any employee, in any field of endeavor, governmental, private enterprise or otherwise, solely on the basis of age. The Act, however, does not apply to "any person elected to public office in any state . . . or any person chosen by such officer to be . . . an appointee on the policymaking level. . . ." 29 U.S.C. § 630(f).
Madame Justice Stout argues that she is not an appointee on the policymaking level and that, therefore, she falls within the substantive provisions of the Act which forbid *583 her termination on the basis of age. She relies upon the opinions of the Attorney Generals of Maryland and South Carolina which advised their respective states that appointed judges in those states are not on the policymaking level of state government. See Opinion of Attorney General of Maryland, Opinion No 86-068, December 29, 1986; Opinion of Attorney General of South Carolina, January 13, 1987.
The Equal Employment Opportunity Commission has reached the same conclusion (See Memorandum of Madame Justice Stout In Support of Summary Judgment, pp 11-12) but the First Circuit Court of Appeals in considering this question, has concluded that the Massachusetts judiciary, both elected and appointed, is on the policymaking level and that the ADEA does not apply to them. EEOC v. Massachusetts, 858 F.2d 52 (1st Cir.1988).
We see nothing in the ADEA to suggest that policymaking activities are restricted to state government only. Nor do we see a definition of state government in the Act which would exclude courts and jurists from policymaking activities. To suggest that a Justice of the Supreme Court of Pennsylvania is not involved in policymaking matters is to ignore the character of the duties and responsibilities imposed upon the members of the Court by the Constitution of Pennsylvania.
In considering whether members of the judiciary, and in particular, members of this Court, are on the policymaking level, we first note that the term "policymaking" is not defined in the ADEA. Since the term is not defined in the act, we must follow the basic rule of statutory construction, that the term is to be construed according to its common and approved usage. "High 01" Times v. Busbee, 673 F.2d 1225, 1229 (11th Cir.1982); Diehl Farms v. OSHA, 696 F.2d 1325 (11th Cir.1983); Donovan v. Frezzo Bros., 678 F.2d 1166 (3rd Cir.1982). Commonwealth v. Mumma, 489 Pa. 547, 414 A.2d 1026 (1980).
"Policymaking" may be defined as the act of elaborating policy (Webster's Ninth New Collegiate Dictionary, p. 910, 1985 Edition), and "policy" is defined as "a definite course *584 or method of action selected from among alternatives and in light of given conditions to guide and determine present and future decisions" or "a high-level overall plan embracing the general goals and acceptable procedures especially of a governmental body." Webster's Ninth New Collegiate Dictionary, p. 910, 1985 Edition.
The Supreme Court of Pennsylvania is the highest Court of the Commonwealth and in it is reposed the supreme judicial power of the Commonwealth. The Court shall consist of seven justices, one of whom, primus inter pares, is designated Chief Justice. Article V, Section 2 of the Pennsylvania Constitution. A most pertinent provision of the Constitution, enlightening to our analysis, is Article V, Sections 10(a), (b) and (c) which provide:
Judicial administration
(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate.
(b) The Supreme Court shall appoint a court administrator and may appoint such subordinate administrators and staff as may be necessary and proper for the prompt and proper disposition of the business of all courts and justices of the peace.
(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of *585 the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.
Because the Constitution reposes all judicial, supervisory and administrative authority over the entire judicial system in Pennsylvania in the Supreme Court, the court acts as a collegiate body, each of the seven justices exercising equal authority with one another, setting policy for the operation of the judicial system and said policy is carried out by the Chief Justice, much as is done with any board of directors of a corporation and its chief executive officer. Each member of the court, be he or she elected, retained or appointed, is charged with the same duties and responsibilities to insure the full and proper execution of the provisions of Article V, Section 10 of our Constitution. During her tenure on the Court from February 8, 1988 to March 7, 1989, Madame Justice Stout enjoyed and fulfilled the same rights, obligations and duties as each of the other members. The members of this Court are more than allocatur reporters and decision makers through written opinions. They are equally fully immersed in the administration and supervision of the judicial system of the Commonwealth and participate in the setting of policy for the proper administration of justice in our courts.
In administering the courts we have also promulgated general rules of procedure, which we have taken pains to point out, are a unique function of this body, and have the force and effect of statutes. Pivirotto v. Pittsburgh, 515 Pa. 246, 528 A.2d 125 (1987); In Re: Petition for Enforcement of Subpoenas to John Doe Corp., A, B, C, D and E, 507 Pa. 137, 489 A.2d 182 (1985); Lohmiller v. Weidenbaugh, 503 Pa. 329, 469 A.2d 578 (1983).
Where we have seen the independence, integrity and impartiality of the judicial system threatened, we have not hesitated to promulgate regulations and directives. For example, we have set the policy that court related personnel *586 are to refrain from participating in political activity and have imposed this rule on members of the various traffic courts (In re: Novalski, 478 Pa. 243, 386 A.2d 530 (1978), on law clerks and tipstaffs (In re Prohibition of Political Activities by Court-Appointed Employees, 473 Pa. 554, 375 A.2d 1257, 1259 (1977)), and we were recently required to reaffirm our position on this subject. In re: Dobson, 517 Pa. 19, 534 A.2d 460 (1987).
Even our decisional law, at times, takes on a rulemaking quality, as when we abrogated the common-law rule of sovereign immunity, (Mayle v. Pennsylvania Dept. of Highways, 479 Pa. 384, 388 A.2d 709 (1978)), or more recently when we ruled that punitive damages could not be assessed against a municipality (Feingold v. SEPTA, 512 Pa. 567, 517 A.2d 1270 (1986)).
We have taken the time to set forth a few of the matters upon which we, as colleagues, are required to speak and vote on from time to time. As can be seen we are charged with charting a definite course of action for the judiciary, and to select our method of action from various alternatives at hand and in light of these conditions to guide and determine the present and future course of this branch of government. It cannot be seriously argued that this is not policymaking, for as our Attorney General pointed out during his well-reasoned argument on the subject, our policymaking power is vast indeed. Having so concluded, we find no vitality in the Respondent's argument. The exception of ADEA at 29 U.S.C. § 630(f) is not applicable and her contrary suggestions must be rejected.
Madame Justice Stout's final argument is that the Equal Protection Clause of the Federal Constitution prevents the mandatory retirement provisions of our Constitution from being applied to her. We will next address this claim.

Equal Protection Argument
Finally, Madame Justice Stout maintains that applying the mandatory retirement provision, Article V, Section 16(b) of our Constitution violates her right to Equal Protection under the Fourteenth Amendment of the Constitution *587 of the United States. In order to raise the issue of equal protection, it is necessary that there be at least one member of a discernible class who is treated differently or unfairly because of that class membership. Respondent asserts that as an appointed Justice rather than an elected Justice, she is a member of such a class who is being prejudiced thereby. We cannot agree.
In Gondelman v. Commonwealth, 520 Pa. 451, 554 A.2d 896 (1989), this Court recently considered and rejected a system-wide challenge to the uniform mandatory retirement provision of Section 16(b). We specifically rejected the argument that Section 16(b) violates the Equal Protection Clause. We did so on the grounds that since neither a "suspect class" was involved nor a federally protected "fundamental" right was at stake, only the minimal judicial scrutiny was required and that under that limited scope of review, the people who adopted our State Constitution had a rational basis for enacting the mandatory retirement age classification in Section 16(b).[1] Despite our decision in Gondelman, Respondent argues that her status as an interim, appointed Justice distinguishes her case from that of elected judges and justices and that the Commonwealth can offer no rational basis for the mandatory retirement of appointed jurists. Essentially, she is contending that either the people, who adopted our Constitution, or this Court, are obligated to create a sub-class of interim appointed judges and justices to whom the mandatory retirement age cannot apply. Madame Justice Stout suggests that the underlying rational basis for compelling mandatory retirement of elected jurists does not apply to appointed jurists who serve on an interim basis.
Madame Justice Stout maintains that since her qualifications to serve on the Court were considered by the Governor and Senate, she has satisfied the condition of demonstrating that she has no mental, physical or legal impediments to serving beyond the age of seventy years. She *588 neglects to consider that, in reviewing her qualifications and finding them admirable, neither the Governor nor the Senate considered the possibility of the age impediment interfering with her fulfilling the constitutional term. They obviously believed she would only serve until January 2, 1989 and confirmed her on that belief.
Madame Justice Stout also implies that the trend today is away from mandatory retirement in the public and private employment sectors. This statement, of course, appears in a vacuum without any authority to support its validity. Regardless of the continuing vitality of mandatory retirement practices and law, it is clear that the people of the various states still impose constitutional barriers to continued judicial service beyond a certain age. As Mr. Chief Justice Nix recently said in Gondelman, speaking for a majority of the Court:
Appellants have offered many thoughtful reasons why the age 70 limit should be reconsidered. This opinion is not to be construed as a rejection of these arguments, but merely a recognition that the body that should make that decision is the people of the Commonwealth of Pennsylvania.
Gondelman v. Commonwealth, supra, 554 A.2d at 902, n. 9.
We do not think that the Equal Protection Clause requires us to create the distinction between elected and appointed jurists which Madame Justice Stout seeks to apply to her classification. We find that the blanket classification adopted in our Constitution is neither arbitrary nor capricious, but, on the contrary, rests on a perfectly reasonable and rational basis.[2] To hold otherwise would create the anomaly of granting power to the Governor and the Senate to appoint a person of any age to replace a fully functional person of age seventy who is compelled to be retired because he or she is an elected or retained jurist. We do not believe that the Equal protection Clause confers *589 any greater rights upon appointed judges than upon elected or retained judges.
Having considered all of Madame Justice Stout's arguments in support of overriding the mandatory retirement provisions of Section 16(b), we conclude that none of these arguments is sufficient to overcome the mandatory application of Section 16(b) to Madame Justice Stout's term of office. Not having carried her burden as Respondent to the quo warranto action of the Attorney General, summary judgment must be granted in favor of the Attorney General and a writ is issued in his favor declaring Madame Justice Stout's seat vacant as of March 6, 1989.
That being the case, the Attorney General's mandamus action must also be decided in his favor. The Court Administrator is directed to remove Madame Justice Stout as an active justice as of March 6, 1989.
Our granting of summary judgment in favor of the Attorney General in the quo warranto and mandamus actions is to be considered as dispositive of the Court Administrator's declaratory judgment action and that action is dismissed as moot.
McDERMOTT, J., joins the majority opinion and files a concurring opinion.
NIX, C.J., files a dissenting opinion in which FLAHERTY, J., joins.
McDERMOTT, Justice, concurring.
Madame Justice Stout is the exemplar of the argument that chronological age is no measure of one's continued ability to offer their wisdom, experience, and skills honed in a lifetime of commitment to their profession. She possesses that inestimable serenity of mind that is the very essence of the search for justice. Her loss to us, for however short a time, is a loss to all. I regretfully join here, as I did before, in the recent cases requiring mandatory retirement at age 70. The state constitution is explicit and there is insufficient federal constitutional authority to say otherwise. *590 Most specifically, and I think all too obvious, it would contravene the clear intent of Article V, if one older than 70 was a replacement for a Justice mandatorily retired at age 70. While that is not exactly the case here, under any other interpretation the option would be open. There is no reason to believe such paradox is beyond human events. Our constitution was written over 20 years ago, since which time we have seen the biblical measure of three score years and ten, granted new dispensation by the wonders of our age. We should take them as a blessing and celebrate them without restriction.
NIX, Chief Justice, dissenting.
As stated by the majority opinion, this appeal is in response to a quo warranto and mandamus action commenced by the Attorney General of the Commonwealth and a Petition for Declaratory Judgment instituted by the Court Administrator of Pennsylvania. The underlying question presented by these actions is whether Article V, section 16(b) terminates the appointed term of Justice Stout as a member of this Court. The only factual disagreement I have with the majority opinion is that it states that this Court requested Justice Stout to remove herself from further participation and consideration of matters coming before the Court on or after March 7, 1989. Justice Stout, being aware that there was a disagreement among the members of the Court as to her status on or after March 7, 1989, made the decision that she would not sit or participate in matters until the instant question was finally determined. Any suggestion that that decision was influenced by a direction of this Court or any members thereof is totally without foundation.
Justice Stout was appointed Justice of the Supreme Court of Pennsylvania on February 8, 1988, pursuant to Article V, section 13(b), to fill the vacancy created by the departure of former Justice William D. Hutchinson. The term of the appointment was to extend until the vacancy created by former Justice Hutchinson's departure was filled by an *591 election, pursuant to Article V, section 13(a). That election was initially scheduled to take place in November of 1988, and the appointive term would have ended on the first Monday of January 1989. Thereafter, on October 25, 1988, this Court determined that Article V, section 13, requires that judicial elections can only occur in municipal elections next preceding the commencement of the term of office to be filled. Thus the Hutchinson vacancy is scheduled to be filled at the municipal election in November 1989. As a consequence, the appointive term was extended to the first Monday of January 1990. Sprague v. Casey, 520 Pa. 38, 550 A.2d 184 (1988).
At the outset, it must be emphasized that the issue presented here is clearly distinguishable from the question recently decided by this Court in Gondelman v. Commonwealth, 520 Pa. 451, 554 A.2d 896 (1989). The issue instantly raised is one of first impression. Under Article V, section 15(a), "[t]he regular term of office of justices and judges shall be ten years . . ." (emphasis added). Pa. Const. Art. V, § 15(a).[1] A justice or judge may secure a regular term either by an election pursuant to section 13(a), or by a retention election pursuant to section 15(b).[2] A justice or *592 judge is only eligible for a retention election in the first instance at the expiration of the regular term secured pursuant to section 13(a). It is expressly noted that the justice or judge is permitted successive retention terms subject, however, to the retirement requirement of section 15(b).
It is significant to the instant inquiry to note that, as originally drafted, section 13(d) provided for an option for gubernatorial appointment of justices and judges from a list submitted by a Judicial Qualifications Commission.[3] Unlike the appointment under section 13(b), Senate confirmation was not required under the proposed section 13(d). Moreover, gubernatorial appointments made pursuant to section 13(d) were for the "regular term" of ten years and were expressly included in the prohibition of section 15(b) requiring retirement upon attaining the age of 70.
The majority completely ignores that the first sentence of section 15(b) expressly enumerates the judicial terms to which that section was intended to apply. Although terms under section 13(a) and (d) were expressly included in section *593 15(b), no mention was made of appointments under section 13(b). The only appointed term mentioned was the ten-year appointed term provided for under section 13(d). This proposed term could also be followed by terms secured by retention elections and the jurist holding such office would have been expressly limited by the mandatory retirement provision of section 16(b). The failure of section 15(b) to mention an appointive term under section 13(b) clearly indicates that the jurist holding such an appointment is not eligible to secure a full ten-year term by a retention election. This intentional omission also strongly suggests that one holding such office pursuant to section 13(b) was never intended to be subjected to the mandatory retirement provisions of section 16(b). It borders on the absurd to argue that an employment commitment for less than two years would implicate the retirement policies of the employer.[4] This is particularly true where the judicial pension plan requires ten years of service to vest. It is not a coincidence that a ". . . regular term of office of justices and judges shall be ten years." Pa. Const. Art. V, § 15(a). Thus there is no legitimate fiscal concern for excluding appointments made under section 13(b) from the purview of the mandatory retirement provision, section 16(b).[5]
Article V does not create an impediment precluding further judicial service upon attaining the age of seventy. Thus the reason for imposing mandatory retirement cannot be viewed as precluding individuals from judicial service *594 solely because they have reached that age. The obvious purpose of the retention election procedure set forth in section 15(b) and the mandatory retirement requirement of section 16(b) was addressed to the fiscal integrity of the system. The length of the terms and the right to successive terms was intended to create a cadre of career jurists. In such a scheme, it is appropriate to provide retirement provisions for long-term employees. Just as section 15(b) excluded the option of retention election for those appointed under section 13(b) because they were not judges who initially served a regular term, section 16(b) was not intended to apply to judges who were temporarily appointed under section 13(b). In neither case was section 13(b) expressly mentioned, but in both instances the intention to exclude is obvious. The consciousness of a distinction by the drafters of the Article and by the people who adopted it is evidenced by the care taken in limiting section 15(b) which provided for retention terms to succeed justices or judges who served the regular term pursuant to section 13(a) and those justices and judges who served a full ten-year term under the proposed appointment under section 13(d). The exclusion of an appointment under section 13(b) provides the clearest intent that the concepts of retention elections as well as retirement were not intended to apply to a short-term appointment provided for under section 13(b).
Sections 15 and 16 are clearly intended to be complementary. Firing v. Kephart, 466 Pa. 560, 353 A.2d 833 (1976).[6] Section 15(a) describes the tenure for "regular terms of office" and subsection (b) delineates the manner by which a justice or judge serving a regular term of office may retain the office. Section 16 complements the preceding provision by providing for the compensation and retirement of justices and judges. Both sections 15 and 16 provide for *595 retirement of these judges serving regular terms upon attaining the age of seventy. The express reference to a "regular term of office" in describing the tenure of judges unquestionably reflects the intention to exclude the appointed term provided under section 13(b) from consideration in the context covered under sections 15 and 16.
An interesting wrinkle not touched upon by the majority could render, for practical purposes, the instant dispute moot.[7] Under the view set forth in this opinion, which the majority rejects, the provisions of sections 15 and 16 do not pertain to appointments under section 13(b). I, therefore, must conclude that an appointive term under section 13(b) would not qualify the person to serve as a senior judge under section 16(c). Consistency would appear to require the majority to reach the contrary view. Proceeding from their premise that an appointive term under section 13(b) is subject to the mandatory retirement provisions of section 16(b) would necessarily require a conclusion that section 16(c) would be applicable to appointments under section 13(b). Restated, if section 13(b) is subject to mandatory retirement under section 16(b), it would appear reasonable to conclude that such an appointment would also qualify the jurist for senior judge status under section 16(c). If this is the implication of today's ruling of the majority, then an assignment of Justice Stout as a senior judge serving on this Court during the continuation of the vacancy pursuant to Rule 701 of the Rules of Judicial Administration, Pa.R. J.A. 701(e), would not only be permissible, but also clearly appropriate. If this position is confirmed by the majority, I would be most pleased to comply, pursuant to Rule 701(e).[8]
*596 I therefore conclude that the plain language of Article V refutes the majority's premise that the mandatory retirement provision of section 16(b) was intended to apply to judges serving an appointed term under section 13(b). Moreover, I am convinced that today's interpretation by the majority clearly causes the Article to run afoul of the Equal Protection Clause of the federal constitution.
I find it of interest that the majority seeks to find solace in our recent decision in Gondelman, supra. As the author of that opinion, I understood its teaching to be that one cannot be precluded from an employment opportunity based solely upon age unless a rational basis can be provided for such disparate treatment. It being evident that the fiscal integrity of the system is not affected by the age of an appointee under section 13(b), the only other legitimate concern would be its impact upon the integrity of the system.
In Gondelman we noted that the legislature, in adopting section 16(b), relied on the findings set forth by the Judiciary Subcommittee of the Preparatory Committee of The Constitutional Convention, which provided a rational basis for the mandatory retirement provision. The Subcommittee determined that section 16(b) would achieve several important purposes. It would eliminate the unpleasantness of pinpointing and removing individual judges who had aged and become disabled, thereby preventing the harm to the judicial system that could be caused by a few senile judges. At the same time, the provision would allow qualified judges who had attained the age of seventy to continue to serve and be compensated as senior judges on a voluntary *597 basis; thus, the continuing problem of court congestion and delay could be alleviated. The Subcommittee also noted that the provision corresponded with a trend towards mandatory retirement in other fields of employment.
Certainly these concerns are rationally related to the goal of providing a competent, effective judiciary, particularly where, as in Gondelman, a ten-year term of office was at issue. See also Malmed v. Thornburgh, 621 F.2d 565 (3d Cir.), cert. denied, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). However, no such lengthy period is contemplated here. Instead, we are addressing a term of office which, according to the constitution could last a maximum of two years. Pa. Const. Art. V, § 13(b). Therefore, the concerns which are reasonable in consideration of the ten-year term of office, which has no method of interim evaluation, become irrelevant where a maximum of two years of service is contemplated.
Justice Stout was appointed pursuant to section 13(b), which provides that all appointed jurists be confirmed by the State Senate after a determination of the appointee's fitness for office.[9] This confirmation process certified her competence for the position at the time of the appointment in February 1988. Clearly the effects of increased age could not be expected to diminish the ability of Justice Stout, or any other appointed member of the bench, during a period of less than two years. Indeed, there has been no suggestion that Justice Stout is now, or will become in the next year, any less competent than she was one year ago. The confirmation process adequately provides a means by which the competence of an appointed jurist can be evaluated. The integrity of the judiciary is in no way compromised by permitting a person over the age of 70 to serve an appointive term to fill a vacancy. Thus the concerns recognized *598 as valid in Gondelman are absent when an appointment is confirmed by the Senate.
The instant interpretation by the majority which would preclude judicial service for a limited period of time following the appointment process would be clearly discriminatory and without any rational foundation. The majority fails to offer an alternative rational basis for requiring jurists appointed under section 13(b) to adhere to the mandatory retirement provision. Absent that rational basis, the failure to distinguish between appointed and elected jurists with respect to section 16(b) is a purely discriminatory classification based on age, and is therefore unconstitutional.[10]
The great tragedy, however, in the majority's decision, is its negative impact on our judicial system. Many highly qualified former judges who have surpassed the age of seventy are, by the majority's decision, prevented from filling vacancies in our court system on an interim basis. Clearly the preclusion of service by judges over seventy is not absolute; senior judge status is expressly permitted by section 16(c). Nevertheless, the majority's decision prevents a retired judge from serving an appointed term of not more than two years, thereby depriving our courts of a valuable resource. Tragically, this misreading of Article V denies our system the availability of former jurists whose abilities and qualifications on the bench have been proven. The limited duration of the appointments under 13(b), by its nature, makes it inefficient for service by individuals without prior judicial experience. Unless that individual is seeking a subsequent regular term, his service during the vacancy is little more than that of a caretaker. If judges *599 appointed under section 13(b) are not forced to retire at age seventy, the incumbent jurist would also be available to fill the vacancy occurring in his own regular term. This latter possibility would be the most efficient and the fairest way to proceed. The appointment process would provide a means for satisfying the Gondelman concerns and would permit a competent and productive jurist to continue his service uninterrupted until the successor is duly elected. This is particularly true in those vacancies that are for periods of less than one year.
If there is a sadness to today's decision, it is that this Court, which traces its existence back to 1681, has only had two female justices, both of whom assumed office by appointment to fill a vacancy. This sorry record of participation by the distaff members of our Commonwealth reflects one type of discrimination. Unfortunately Justice Stout was denied the opportunity even to complete this limited participation as a member of this Court because of an additional type of discrimination, age discrimination.
I therefore register a most vociferous dissent.
FLAHERTY, J., joins in this opinion.
NOTES
[1] This writer agreed with the rationale employed by the majority but dissented on other grounds in Gondelman, supra. See also, Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).
[2] See Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).
[1] Article V, section 15(a) provides in pertinent part:

(a) The regular term of office of justices and judges shall be ten years and the regular term of office for judges of the municipal court and traffic court in the City of Philadelphia and of justices of the peace shall be six years. The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.
[2] Article V, section 15(b) provides in pertinent part:

(b) A justice or judge elected under section thirteen (a), appointed under section thirteen (d) or retained under this section fifteen (b) may file a declaration of candidacy for retention election with the officer of the Commonwealth who under law shall have supervision over elections on or before the first Monday of January of the year preceding the year in which his term of office expires. If no declaration is filed, a vacancy shall exist upon the expiration of the term of office of such justice or judge, to be filled by election under section thirteen (a) or by appointment under section thirteen (d) if applicable. If a justice or judge files a declaration, his name shall be submitted to the electors without party designation, on a separate judicial ballot or in a separate column on voting machines, at the municipal election immediately preceding the expiration of the term of office of the justice or judge, to determine only the question whether he shall be retained in office. If a majority is against retention, a vacancy shall exist upon the expiration of his term of office, to be filled by appointment under section thirteen (b) or under section thirteen (d) if applicable. If a majority favors retention, the justice or judge shall serve for the regular term of office provided herein, unless sooner removed or retired. At the expiration of each term a justice or judge shall be eligible for retention as provided herein, subject only to the retirement provisions of this article.
[3] Proposed Article V, section 13(d), provided in pertinent part:

(d) At the primary election in 1969, the electors of the Commonwealth may elect to have the justices and judges of the Supreme, Superior, Commonwealth and all other statewide courts appointed by the Governor from a list of persons qualified for the offices submitted to him by the Judicial Qualifications Commission. If a majority vote of those voting on the question is in favor of this method of appointment, then whenever any vacancy occurs thereafter for any reason in such court, the Governor shall fill the vacancy by appointment in the manner prescribed in this subsection. Such appointment shall not require the consent of the Senate.
The question of appointing justices and judges under section 13(d) was submitted to the voters of this Commonwealth at the primary election on May 20, 1969, and was rejected.
[4] Under the language of section 13(b) the vacancy to be filled by appointment could not extend beyond two years. Even with the extension in the instance of Justice Stout's appointive term, the period of time would be less than two years. The seat in question will be filled pursuant to section 13(a) on the first Monday of January 1990. Since the date of Justice Stout's appointment was February 8, 1988, the amended term would have consisted of twenty-two months.
[5] At the time of her appointment to the bench of this Court, Justice Stout was serving a ten-year retention term on the Court of Common Pleas which commenced on the first Monday of January 1980. Claim to her present seat is not predicated upon her previous election and retention elections, but rather as a result of an appointment pursuant to Article V, section 13(b).

There is no dispute that the retention term of office on the Court of Common Pleas would have terminated on her seventieth birthday.
[6] The majority, in its opinion, acknowledges and accepts the language in Firing v. Kephart, 466 Pa. 560, 353 A.2d 833 (1976), which stresses that ". . . Section 15(b) provides a clear guide to the meaning and application of section 16(b)." Firing, supra, 466 Pa. at 568, 353 A.2d at 837; see In Re Matter of Madam Justice Juanita Kidd Stout, at 494 (1989). Having acknowledged the existence of the signpost, the majority inexplicably fails to follow the direction provided.
[7] This course of action would not eliminate the constitutional problems raised by the decision of the majority, it would, however, permit Justice Stout to continue her service on this bench until the vacancy is filled pursuant to section 13(a).
[8] As a result of her service on the court of common pleas, having served a full term and two retention terms, she would undoubtedly be entitled to senior judge service on the court of common pleas. We have also, on occasion, permitted a jurist to serve on a bench higher than the bench from which they retired. However, this Court has never attempted to exercise the authority to appoint a former or retired judge to the Supreme Court. In view of the administrative responsibilities entrusted to this Court by section 10 of the Article and its role as the final arbiter of the law in this Commonwealth, it was deemed appropriate for the Court itself to refrain from making such appointments. However, if the majority's view is now the law, the constitution has authorized such appointments and, therefore, the prior hesitancy in making such an appointment is no longer valid. This is particularly true since the person appointed has served on this Court. The exercise of the power in this instance would only continue that service on the Court for the full intended appointive term.
[9] Initially section 13(b) provided for this confirmation process except when the Senate was not in session. This section has since been amended to require advice and consent to all judicial appointments. Pa. Const. Art. V, § 13(b) (1969), as amended May 20, 1975, May 16, 1978, and November 6, 1979. (Supp. 1988-1989).
[10] It is to be emphasized that the question is not whether the Equal Protection Clause confers a greater right upon an appointed judge than upon an elected or retained judge. The core of the Equal Protection argument is that, in the case of judicial service pursuant appointment under section 13(b), there is no rational basis for foreclosing that opportunity to an individual solely because he has attained the age of 70. The mere fact that we preclude judges from further service under regular elective terms beyond the age of 70 does not justify refusing to permit a judge appointed to fill a vacancy where the only reason for that refusal is the fact of age.